IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


VINCENT TRAN,                              07-CV-953-BR

          Plaintiff,

                                          OPINION AND ORDER

v.

TYCO ELECTRONICS,
CORPORATION, A foreign
business corporation
registered in Pennsylvania,
DBA TYCO ELECTRONICS
PRECISION INTERCONNECT,

          Defendant.


VINCENT TRAN
16100 S.E. Mill Street
Portland, OR  97233
(503) 760-3833

          Plaintiff, *Pro Se*

LEAH S. SMITH
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
(602) 778-3709


1 - OPINION AND ORDER

**DAVID J. RIEWALD**
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway
Suite 1900
Portland, OR 97205
(503) 248-1134

       Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court on Defendant's Motion for Summary Judgment (#46).  For the reasons that follow, the Court **GRANTS** Defendant's Motion.


<u>**BACKGROUND**</u>

     In 1992 Precision Interconnect hired Plaintiff Vincent Tran, a Vietnamese male, as a Senior CAD Operator.  In 1996 Precision Interconnect promoted Plaintiff to the position of Design/Drafter.  In 1999 Precision Interconnect was acquired by Tyco Healthcare, but former Precision Interconnect employees continued to use their Precision Interconnect job titles.

     In 2001 Tyco Healthcare required all former Precision Interconnect employees to be assigned Tyco Healthcare job titles so they could be placed in Tyco Healthcare's Human Resources database and payroll system.  Accordingly, Tyco Healthcare's Human Resources Department assigned Tyco Healthcare job titles to all former Precision Interconnect employees based on the criteria for each job code including the employee's "job level."  As a

2 - OPINION AND ORDER

result of the conversion, the job titles of Plaintiff and Gary
Scott, a Caucasian male, changed from Design/Drafter to Senior
Drafter.  The titles of at least two other employees in
Plaintiff's department also changed from Designer to Design
Drafter.  Plaintiff's job duties and rate of pay did not change.

On January 14, 2003, Plaintiff complained to Human Resources
about the change in his job title.  On January 16, 2003,
Plaintiff complained to Bruce Barney, his Supervisor at that
time, that the change in his job title was a demotion based on
Plaintiff's race or age.  Both Human Resources and Barney told
Plaintiff that he was not demoted; that Tyco Healthcare did not
have a position that corresponded to Design/Drafter; and,
therefore, that Plaintiff was made a Senior Drafter.

In September 2003, Tyco Healthcare transferred Precision
Interconnect to Defendant Tyco Electronics.

On April 24, 2004, Defendant posted an opening for the
position of Design Drafter on its intranet site, and on June 11,
2004, Defendant posted an opening for the position of Drafter on
its intranet site.  Plaintiff did not apply for either of these
positions.  Defendant, therefore, did not consider Plaintiff as a
candidate for either position.

In September 2005, Defendant reorganized its Design Services
Department into two separate departments.  As part of the
reorganization, Defendant transferred several employees,

3 - OPINION AND ORDER

including Plaintiff and Scott, to its Documentation Services Department.  Evelyn King became Plaintiff's supervisor in October 2005.

Defendant's fiscal year runs from October 1 to September 30 and employee evaluations are typically completed at the end of the fiscal year.  King solicited feedback from Barney as to Plaintiff's performance before October 2005 to facilitate Plaintiff's FY 2005 evaluation.  King also observed the performance of Plaintiff and other recently transferred employees between October 2005 and January 2006.  In January 2006, King rated Plaintiff's performance as "below expectations" for FY 2005 based on Barney's feedback and her own experience as Plaintiff's supervisor.

In January and February 2006, King verbally counseled Plaintiff on performance deficiencies such as the number and frequency of errors in his work, the low quantity of work he completed, and his failure to follow directions.  Between January and March 2006, King discussed with Plaintiff errors in his work at least eight times.  On March 24, 2006, King issued a written performance warning to Plaintiff in which she reviewed her previous verbal warnings, noted Plaintiff's lack of improvement, set out goals for Plaintiff to achieve, and advised Plaintiff that she would take further disciplinary action "including suspension and/or immediate termination" if he did not improve

4 - OPINION AND ORDER

his performance.  Plaintiff signed the warning acknowledging he received it.

On May 4, 2006, Plaintiff filed a complaint simultaneously with the Oregon Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commission (EEOC).

In late May 2006, King modified Plaintiff's job duties because he did not observe sustained improvement in Plaintiff's work.  King reduced Plaintiff's drawing to one type and assigned Plaintiff other duties within the department such as multimedia and document distribution, which she believed would reduce Plaintiff's errors as well as her own review time.

On September 27, 2006, Plaintiff fell at home and injured his right wrist.  On October 2, 2006, Plaintiff attempted to return to work, but Defendant required him to obtain a release from his doctor before he could return to work.  Plaintiff obtained a doctor's release and returned to work on October 3, 2006.

In October 2006, Plaintiff requested to attend TEPSIE training.  King denied Plaintiff's request on the ground that TEPSIE training relates to equipment approval and implementation in manufacturing, which were not part of Plaintiff's job responsibilities.

In late November 2006, King reassigned one of Plaintiff's projects to another member of the Documentation Services

Department because King felt the project was too complex for
Plaintiff's skill level.

On December 19, 2006, Plaintiff filed a Complaint in this
Court, Case No. 06-CV-1810-BR, alleging, among other things, that
Defendant violated 42 U.S.C. § 1981 when it changed Plaintiff's
job title, did not select him for the Design Drafter and Drafter
positions open in 2004, included the months of October through
January in his FY 2005 performance evaluation, and changed his
work duties in 2006.

On January 4, 2007, Plaintiff advised a customer that he
could not help with her request for assistance.  On January 5,
2007, King counseled Plaintiff in an email and a five-minute
conversation that Plaintiff should have attempted to help the
customer with her problem and that his response was
unsatisfactory because it conveyed a negative image of the
Documentation Services Department.  King did not subject
Plaintiff to any further discipline as a result of this incident.

In January 2007, King also assigned Plaintiff and another
employee, Renie Brown, to move files to facilitate the
construction of cubicles and storage areas.

In February 2007, King rated Plaintiff's job performance for
FY 2006 as "below expectations."

On June 28, 2007, Plaintiff filed a Complaint in this
action, Case No. 07-CV-953-BR, in which he alleged Defendant

6 - OPINION AND ORDER

violated Oregon Revised Statutes § 659A.030(1)(f) when it
retaliated against Plaintiff for resisting unlawful
discrimination based on his race, age, or national origin.

On July 11, 2007, Plaintiff filed an Amended Complaint in
this action in which he alleged Defendant (1) violated Oregon
Revised Statutes § 659A.030(1)(f) when it retaliated against
Plaintiff for resisting discriminatory treatment based
on his race, age, or national origin and (2) violated Title VII,
42 U.S.C. §§ 2000e-2 and 2000e-3, by retaliating against
Plaintiff for filing a BOLI complaint.

On September 28, 2007, Plaintiff filed a second Amended
Complaint in this action in which he alleged Defendant
(1) discriminated against Plaintiff on the basis of his race,
color, and/or national origin in violation of Title VII, 42
U.S.C. § 2000e-2(m); (2) discriminated against Plaintiff on the
basis of his race in violation of 42 U.S.C. § 1981; (3) dis-
criminated against Plaintiff on the basis of his race, color,
and/or national origin in violation of Oregon Revised Statutes
§ 659A.030; (4) intentionally and negligently inflicted emotional
distress; (5) committed fraud; and (6) violated Title VII, 42
U.S.C. § 2000e-2 and § 2000e-3, by retaliating against Plaintiff
because he filed a BOLI complaint.

In October 2007, Plaintiff requested assistance from Brown
to access Defendant's Master Documentation Database (MDD).  King

7 - OPINION AND ORDER

counseled Plaintiff that he should not have requested assistance from his co-worker, but instead should have sought help directly from King because Brown had transferred to another position. Defendant did not subject Plaintiff to further discipline for the incident.

On January 22, 2008, the Court entered an Opinion and Order in this action in which it granted Defendant's Motion to Dismiss Plaintiff's claims for intentional and negligent infliction of emotional distress and fraud.

On February 14, 2008, Plaintiff filed a third Amended Complaint in this action in which he alleges Defendant discriminated against him on the basis of his national origin in violation of Title VII, 42 U.S.C. § 2000e-2, 42 U.S.C. § 1981, and Oregon Revised Statute § 659A.030 when it (1) included the months of October 2005-January 2006 in his FY 2005 performance evaluation, (2) required him to correct errors in his work, (3) reviewed his work more slowly than the work of his peers, and (4) denied him TEPSIE training.  Plaintiff also alleges Defendant retaliated against him for filing a BOLI complaint and his prior federal court action by (1) assigning him to undesirable jobs such as moving files; (2) requiring him to obtain a doctor's release before allowing him to return to work in October 2006; (3) counseling him about his customer interaction on January 5, 2007; and (4) counseling Plaintiff about requesting assistance

8 - OPINION AND ORDER

from Brown for access to the MDD.

On May 27, 2008, Defendant filed a Motion for Summary Judgment in which it seeks summary judgment as to all of Plaintiff's claims.[1]


## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be

---

[1] On June 2, 2008, the Court issued a Summary Judgment Advice Notice advising Plaintiff that if he did not submit evidence in opposition to any motion for summary judgment, summary judgment would be entered against him if it was appropriate.

granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


## **DISCUSSION**

Defendant moves for summary judgment on all of Plaintiff's claims.

10 - OPINION AND ORDER

I.    **Standards.**

Title VII, 42 U.S.C. § 2000e-2 provides in pertinent part:

> It shall be an unlawful employment practice for an employer-
>
>> (1) to . . . otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . or national origin.

Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

Oregon Revised Statute § 659A.030(1)(b) provides in pertinent part:

> It is an unlawful employment practice:
> (a) For an employer, because of an individual's race, . . . [or] national origin, . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment.

A plaintiff must meet the same standards to prove a claim under § 1981 and § 659A.030(1)(b) that he must meet to establish a claim under Title VII. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003)("We also recognize that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action."). *See also EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n.7 (9th Cir. 1984)("A

11 - OPINION AND ORDER

plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII."); *Bernsten v. Dollar Tree Stores, Inc.*, No. CV 05-1964-MO, 2007 WL 756744, at *3 (D. Or. Mar. 6, 2007)("[The plaintiff's] discrimination claims under Title VII, 42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030 are subject to the same legal standards, and facts sufficient to give rise to one claim are sufficient to give rise to all.")(citing *Wallis v. J.R. Simplot Co.*, 26 F .3d 885, 889 (9th Cir. 1994)); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987); *Henderson v. Jantzen, Inc.*, 719 P.2d 1322, 1324 (Or. Ct. App. 1986)(the standard used to establish a *prima facie* case of discrimination under Oregon and federal law is essentially identical).

In addition, the burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to claims of discrimination brought under Title VII and § 1981.  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008).

Although Oregon State courts do not follow the *McDonnell Douglas* burden-shifting formula when analyzing claims under § 659A.030, *see Callan v. Confederation of Oregon School Administration*, 79 Or. App. 73, 78 n.3 (1986), this Court applies the *McDonnell Douglas* burden-shifting analysis to claims brought

in federal court under § 659A.030.  *See Snead v. Met. Prop. &
Cas. Ins. Co.*, 237 F.3d 1080, 1092 (9th Cir. 2001)(the *McDonnell
Douglas* burden-shifting framework is federal procedural law, and,
therefore, federal courts must apply it to discrimination claims
under § 659A.030 brought in federal court).  *See also Yartzoff v.
Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)("The *McDonnell-
Douglas* order and allocation of proof that governs disparate
treatment claims also governs retaliation claims.");  *Aldridge v.
Yamhill County*, No. CV. 05-1257-PK, 2006 WL 1788178, at *5 n.1
(D. Or. June 23, 2006)("Although Oregon courts analyzing claims
under Or. Rev. Stat. § 659A.030 have rejected the *McDonnell
Douglas* burden- shifting approach, it is nonetheless appropriate
for federal courts to use the *McDonnell Douglas* approach in state
law claims.");  *Williams v. Fed. Express Corp.*, 211 F. Supp. 2d
1257, 1264 (D. Or. 2002)("In a retaliation case, the burden
shifting scheme is similar to that in a discrimination case, and
applies to claims under both state and federal law.").

     Initially, therefore, the plaintiff has the burden to
establish a *prima facie* case of discrimination.  If the plaintiff
establishes a *prima facie* case, the burden shifts to the
defendant to articulate a legitimate, nondiscriminatory reason
for its action.  Finally, if the defendant carries its burden,
the plaintiff must prove by a preponderance of the evidence that
the defendant's reasons were merely a pretext for discrimination.

*Burdine*, 450 U.S. at 252-53.  *See also McDonnell Douglas Corp.*, 411 U.S. at 802-04.  Although the *McDonnell Douglas/Burdine* formula shifts the burden of producing evidence, it does not relieve a plaintiff of his ultimate burden to prove discrimi-natory intent by a preponderance of the evidence.  *Burdine*, 450 U.S. at 253 (citation omitted).

**II.  Plaintiff's disparate-treatment claims.**

Plaintiff contends Defendant discriminated against him on the basis of his national origin in violation of Title VII, § 1981, and § 659A.030 when King included the months of October through January in his FY 2005 performance evaluation, required him to correct errors in his work, reviewed his work more slowly than the work of his peers, and denied him TEPSIE training.

**A.  2005 performance evaluation, requirement to fix work errors, and review of Plaintiff's work.**

As noted, Plaintiff contends Defendant discriminated against him when King included the months of October through January in his FY 2005 performance evaluation, required him to correct errors in his work, and reviewed his work more slowly than the work of other employees.

To establish a *prima facie* claim for disparate treatment under Title VII, § 1981, and § 659A.030, a plaintiff

> must offer proof:  (1) that the plaintiff belongs to a class of persons protected by [the statute]; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the

> plaintiff's employer treated the plaintiff
> differently than a similarly situated employee who
> does not belong to the same protected class as the
> plaintiff.

*Cornwell v. Electra Cent. Cred. Union*, 439 F.3d 1018, 1028 (9th

Cir. 2006)(citation omitted).

It is undisputed that Plaintiff belongs to a protected

class under Title VII, § 1981, and § 659A.030.  Defendant,

however, asserts Plaintiff did not suffer an adverse employment

action; Plaintiff was not performing his job satisfactorily; and

Plaintiff was not treated differently from Gary Scott, a

similarly situated Caucasian employee.

### 1. **Plaintiff's 2005 performance evaluation**.

Plaintiff contends Defendant discriminated against

him by including the months of October 2005 through January 2006

in his FY 2005 performance evaluation.

Even if Defendant's inclusion of three additional

months in Plaintiff's performance evaluation was an adverse

employment action, which is questionable, the record reflects

Defendant did the same with all of the employees supervised by

King in October 2005, including Gary Scott.  Plaintiff, however,

maintains King did not include the months of October 2005 through

January 2006 in her evaluations of two other Caucasian employees.

The record, however, reflects King did not supervise those two

employees until October 2006 and October 2007 respectively.  In

other words, King did not perform evaluations on these employees

15 - OPINION AND ORDER

for FY 2005.

On this record, the Court concludes Plaintiff has
not established a *prima facie* case of discrimination based on his
FY 2005 performance evaluation.  Accordingly, the Court grants
Defendant's Motion for Summary Judgment as to Plaintiff's
disparate-treatment claims based on the FY 2005 performance
evaluation.

**2.   Correction of work errors.**

Plaintiff also contends Defendant discriminated
against him because King required him to correct errors in his
work, but she did not require Gary Scott or Jason Woods to do the
same.

As a threshold matter, it is questionable whether
requiring an employee to correct errors in his work is an adverse
employment action.  Even if the Court concluded Defendant's
requirement that Plaintiff correct errors in his work was an
adverse employment action, however, Plaintiff does not allege
King fabricated errors in Plaintiff's work nor does he present
any evidence that King intentionally ignored errors in work done
by other similarly situated employees.  In fact, Plaintiff
conceded at his deposition that King occasionally missed errors
in Plaintiff's work and that he does not know how many times King
required Plaintiff's peers to correct their errors.  Moreover,
King testifies in her Declaration that she required all of the

16 - OPINION AND ORDER

employees under her supervision to correct the errors she found
in their work.

In any event, the record reflects King did not
supervise Woods nor review his work. As noted, Plaintiff also
has not established that King intentionally ignored errors in
work done by Scott or other similarly situated employees under
King's supervision.

On this record, the Court concludes Plaintiff has
not established that King treated Plaintiff differently than she
treated other similarly situated employees who do not belong to
the same protected class as Plaintiff. Accordingly, the Court
grants Defendant's Motion for Summary Judgment as to Plaintiff's
claims for disparate treatment based on Defendant's requirement
that Plaintiff correct his work errors.

### 3. Review of Plaintiff's work.

Plaintiff contends Defendant discriminated against
him because King reviewed Plaintiff's work more slowly than she
reviewed the work of his peers. Plaintiff contends King's slower
review led to slower turn-around-time statistics for Plaintiff,
which reflected poorly on his work performance.

At his deposition, Plaintiff conceded he does not
have any evidence as to how long King took to review the work of
his peers, and Plaintiff does not present any evidence in his
Response to Defendant's Motion that establishes King actually

17 - OPINION AND ORDER

took longer to review Plaintiff's work than she took to review the work of similarly situated employees in her department. Plaintiff's subjective feeling that King took longer to review his work is not sufficient to establish the *prima facie* elements of Plaintiff's claim.

On this record, the Court concludes Plaintiff has not established that Defendant treated Plaintiff differently than she treated other similarly situated employees who do not belong to the same protected class as Plaintiff with respect to the review time for Plaintiff's work. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's claims for disparate treatment based on the time Defendant took to review Plaintiff's work.

**B. Denial of TEPSIE training.**

Plaintiff contends Defendant discriminated against him when King did not send him to TEPSIE training. Denial of training may constitute an adverse employment action. *See Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1102-03 (D. Or. 2007)("[A] reasonable juror could conclude that plaintiff was denied training to which she was entitled, and that such treatment constituted an adverse employment action."). In addition, it is undisputed that other employees outside of Plaintiff's protected class attended TEPSI training.

Defendant asserts a legitimate, nondiscriminatory

18 - OPINION AND ORDER

reason for King's refusal to send Plaintiff to TEPSIE training:
The training was not relevant to Plaintiff's job duties.

Plaintiff has not pointed to any evidence in the record
that establishes Defendant's legitimate, nondiscriminatory reason
for denying Plaintiff's request to attend TEPSIE training is mere
pretext for discrimination.  In addition, Plaintiff conceded at
deposition that he did not have any evidence that TEPSIE training
was related to his job duties or that his work was affected
because he was denied training.

On this record, the Court concludes Plaintiff has not
established Defendant's legitimate, nondiscriminatory reason for
denying Plaintiff TEPSIE training was mere pretext for
discrimination.  Accordingly, the Court grants Defendant's Motion
for Summary Judgment as to Plaintiff's claims for disparate
treatment based on the denial of TEPSIE training.

**III. Plaintiff's retaliation claims.**

Plaintiff contends Defendant retaliated against him for
filing a BOLI complaint and/or his December 2006 federal action
when it (1) changed his job duties in May 2006, (2) required him
to provide a medical release before he could return to work in
October 2006, (3) included the months of October 2005 through
January 2006 in his FY 2005 performance evaluation, (4) did not
send him to TEPSIE training in October 2006, (5) required him
correct errors in his work, (6) delayed review of his work,

19 - OPINION AND ORDER

(7) reassigned one of his projects in November 2006, (8) gave him
an unfavorable performance evaluation for FY 2006 in January
2007, (9) reprimanded him for poor customer service in January
2007, (10) assigned him to move files in January 2007, and
(11) reprimanded him for asking a co-worker how to access the MDD
in October 2007.

     To establish a *prima facie* case of retaliation under Title
VII, § 1981, and § 659A.030, a plaintiff must show:

> (1) [he] engaged in a protected activity, such as
> the filing of a complaint alleging racial
> discrimination, (2) the [defendant] subjected
> [him] to an adverse employment action, and (3) "a
> causal link exists between the protected activity
> and the adverse action."

*Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003)(quoting

*Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

**A.    Plaintiff's claims involving actions before July 10,
       2007.**

     Defendant asserts Plaintiff cannot establish a causal
link between Defendant's alleged retaliatory conduct and
Plaintiff's filing of a BOLI complaint and/or his December 2006
federal lawsuit other than the allegation that King reprimanded
him for asking Brown how to access the MDD in October 2007
because King did not learn about either Plaintiff's BOLI
complaint or the federal lawsuit until July 10, 2007.

     To prove a *prima facie* case of retaliation, the court may
infer a causal link from two elements of circumstantial evidence:

20 - OPINION AND ORDER

>           (a) the decisionmaker knew of the plaintiff's protected
>           activity at the time the adverse action was taken; and
>           (b) there was proximity in time between the protected
>           action and the allegedly retaliatory employment
>           decision.

*Stimson v. Potter*, No. C 05-0411 PJH, 2006 WL 449133, at *5 (N.D.

Cal. Feb. 22, 2006)(citing *Yartzoff v. Thomas*, 809 F.2d 1371,

1376 (9th Cir. 1987)), *overruled on other grounds by Payan v.*

*Aramark Mgmt. Serv. Ltd. Partnership*, 495 F.3d 1119 (9th Cir.

2007).  "Essential to a causal link [element of a retaliation

claim under Title VII] is evidence that the employer was aware

that the plaintiff had engaged in the protected activity."  *Cohen*

*v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  *See also*

*Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185,

1197 (9th Cir. 2003)(to establish a causal link, "the plaintiff

must make some showing sufficient for a reasonable trier of fact

to infer that the defendant was aware that the plaintiff had

engaged in protected activity.").  *See also Wheeler v. Ariz.*

*Dep't of Corrections*, No. CV-06-2011-PHX-DGC, 2008 WL 724982, at

*3 (D. Ariz. Mar. 17, 2008)("Obviously, if a charge is not filed

with the EEOC until after the discharge, the latter cannot be

motivated by a desire to retaliate for the former.")(quotation

omitted).  *See also Silver v. KCA, Inc.*, 586 F.2d 138, 142-43

(9th Cir. 1978)(same).

        Here Plaintiff conceded at deposition that he does not

have any evidence nor does the record reflect that King knew

Plaintiff had filed a BOLI complaint or the December 2006 lawsuit before July 10, 2007, when she took the actions complained of by Plaintiff.  Plaintiff, therefore, has not established a causal connection between these events.  *See Raad*, 323 F.3d 1198 ("[The plaintiff] fails to point to any evidence in the record supporting her assertion that [the defendant's employees], the particular principals who made the allegedly retaliatory hiring decisions, in fact were aware of her complaints.  Without any such evidence, there is no genuine issue of material fact.").

Accordingly the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims related to actions taken by Defendant before July 10, 2007.

**B.    October 2007 Reprimand.**

Plaintiff contends King retaliated against Plaintiff for filing a BOLI complaint and/or the December 2006 lawsuit by reprimanding him in October 2007 for requesting access to the MDD from Brown.  As noted, the reprimand consisted of an email to Plaintiff in which King stated, "It is not fair to ask this question of [your co-worker].  You should bring your problem to me."  Plaintiff was not subject to any further disciplinary action for the incident.

In *Burlington Northern & Santa Fe Railroad Company v. White*, the Supreme Court explained the criteria necessary to consider an act as "actionable retaliation":

22 - OPINION AND ORDER

[A] plaintiff must show that a reasonable employee
would have found the challenged action materially
adverse, "which in this context means it well
might have 'dissuaded a reasonable worker from
making or supporting a charge of discrimination.'"
*Rocho*n, 438 F.3d, at 1219 (quoting *Washington*, 420
F.3d, at 662).

We speak of material adversity because we
believe it is important to separate significant
from trivial harms.  Title VII, we have said, does
not set forth "a general civility code for the
American workplace."  *Oncale v. Sundowner Offshore
Services, Inc.*, 523 U.S. 75, 80 (1998); *see
Faragher*, 524 U.S., at 788 (judicial standards for
sexual harassment must "filter out complaints
attacking 'the ordinary tribulations of the
workplace, such as the sporadic use of abusive
language, gender-related jokes, and occasional
teasing' ").  An employee's decision to report
discriminatory behavior cannot immunize that
employee from those petty slights or minor
annoyances that often take place at work and that
all employees experience.  See 1 B. Lindemann & P.
Grossman, Employment Discrimination Law 669 (3d
ed.1996)(noting that "courts have held that
personality conflicts at work that generate
antipathy" and "'snubbing' by supervisors and
co-workers" are not actionable under § 704(a)).
The anti-retaliation provision seeks to prevent
employer interference with "unfettered access" to
Title VII's remedial mechanisms.  *Robinson*, 519
U.S., at 346.  It does so by prohibiting employer
actions that are likely "to deter victims of
discrimination from complaining to the EEOC," the
courts, and their employers.  *Ibid*.  And normally
petty slights, minor annoyances, and simple lack
of good manners will not create such deterrence.
*See* 2 EEOC 1998 Manual § 8, p. 8-13.

548 U.S. 53, 67-68 (2006).

On this record, the Court concludes the email directing

Plaintiff to ask King for help without any accompanying

discipline does not constitute an adverse employment action

23 - OPINION AND ORDER

because it is not the kind of action that would objectively "'deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id*. at 68.  Instead it is a "petty slight" or "minor annoyance." *Id*.  *See also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)("[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation.").  The Court, therefore, concludes Plaintiff has not established the element of causal connection necessary to establish a *prima facie* case of retaliation related to his October 2007 reprimand.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims related to Plaintiff's October 2007 reprimand.

**C.    Requirement to correct errors in work and delay in reviewing work.**

To the extent Plaintiff contends King continued to require him to correct errors in his work and delayed reviewing his work after July 2007, the Court concludes neither of these actions are adverse employment actions for purposes of Title VII, § 1981, or § 659A.030.  Requiring an employee to correct his work and the order in which a supervisor reviews work are managerial decisions and are not the kind of actions that are likely to deter victims of discrimination from complaining to the EEOC.

In addition, Plaintiff alleges King required him to

24 - OPINION AND ORDER

correct errors in his work and reviewed his work more slowly that the work of his peers before as well as after she learned about his BOLI action and federal lawsuit.  The Court, therefore, cannot infer an improper motive for King's conduct when it also occurred before Plaintiff filed his BOLI complaint or his federal lawsuit.  *See Fyfe v. City of Fort Wayne*, 241 F3d 597, 602 (7th Cir. 2001)(no inference of discrimination exists when the conduct at issue preceded the protected activity).

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims related to Defendant's requirement that Plaintiff correct errors in his work and the speed at which Defendant reviewed his work.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#46).

IT IS SO ORDERED.

DATED this 29th day of September, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


25 - OPINION AND ORDER